CAUSE NO. _____

| | | |
|---|---|---|
| CITY OF CANTON, TEXAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | VAN ZANDT COUNTY, TEXAS |
| | § | |
| NEW BEGINNINGS FELLOWSHIP | § | |
| CHURCH OF HOUSTON, TEXAS, and | § | |
| BARNEY JOE DONALSON, JR., | § | |
| individually and d/b/a as COVENANT | § | |
| COMMUNITY OF NEW BEGINNINGS | § | |
| FELLOWSHIP/CANTON, | § | |
| | § | |
| | § | |
| Defendants. | § | 294th JUDICIAL DISTRICT |

## PLAINTIFF CITY OF CANTON'S ORIGINAL PETITION, AND VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND CIVIL PENALTIES

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff City of Canton, Texas ("City"), pursuant to Rules 680-693 of the Texas Rules of Civil Procedure, Chapter 54 of the Texas Local Government Code, and other applicable statutes, hereby files the following Plaintiff's Original Petition, and Verified Application for Temporary Restraining Order, Temporary and Permanent Injunctive Relief, Declaratory Judgment, and Civil Penalties ("Original Petition"), complaining of Defendants New Beginnings Fellowship Church of Houston, Texas ("NBFCH"), and Barney Joe Donalson, Jr., individually ("Donalson"), and doing business as Covenant Community of New Beginnings Fellowship/Canton ("CCNBFC") (collectively "Defendants"), and respectfully shows the Court the following:

# I.
## BACKGROUND

1.01.    Defendants own and operate the former nursing home property at 673 W. College Street, formerly 901 W. College Street, in the City of Canton, Texas, as a purported "residential condominium complex."    Unfortunately, Defendants' attempted use of that facility in that manner does not comply with several important City of Canton ordinances and regulations that were enacted to provide for the health, safety and welfare of the City's residents.  Defendants' failures include, but are not limited to, the following: (1) the zoning classification on the property does not allow for the residential use of the property; (2) the property does not have a certificate of occupancy issued from the City for it to be occupied as a residence by individuals; (3) the property lacks adequate and code-compliant electrical systems and service, instead using an unapproved solar panel system connected with extension cords; and (4) the property contains numerous other serious code violations, to wit: open electrical boxes, broken windows, accumulation of combustible products, open interior walls and ceilings, inoperable fire alarm system, inoperable fire sprinkler system, improper storage of flammable substances, non-compliant electric generators, non-compliant emergency exits, mold and mildew, inadequate plumbing, non-working climate control systems, the possible presence of asbestos, improper fire ratings on key building materials, use of propane tanks in interior spaces and near electric cords, open electrical panels and wiring, water damage, and other problems.

1.02.    Defendants have been repeatedly notified of these, and other, serious health and safety issues.  Defendants have failed and refused to remedy these numerous health and safety issues, have installed non-code compliant work-arounds, and continue to occupy and maintain an unsafe, unhealthy and dangerous building.  Recent activity at the property exemplifies these serious problems, and more people, furniture and fixtures appear to be moving into and

occupying the substandard building on the property. Recently, Defendants constructed a gate that limits access to the property by emergency services and other City personnel, which gate was not constructed pursuant to a required City building permit, and have erected an antenna without the required City special use permit. The City's efforts to obtain compliance with its ordinances and codes to provide for the health, safety and welfare of the citizens and visitors in the City of Canton have failed.

1.03. It is clear that Defendants intend to continue to occupy and to use the property and structure that is unfit, dangerous, and lacks basic health and safety requirements. The City is left with no choice but to file suit and seek the Court's help in ensuring the safety of the property.

II.
## DISCOVERY PLAN, DAMAGES, AND REQUEST FOR DISCLOSURE

2.01. The City intends that discovery be conducted in accordance with a Level 2 Discovery Control Plan pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

2.02. Pursuant to Rule 47(c) of the Texas Rules of Civil Procedure, the City seeks monetary relief of $100,000 or less, and non-monetary relief.

2.03. This action is not subject to the expedited actions process under Rule 169 of the Texas Rules of Civil Procedure because the City seeks non-monetary relief in addition to monetary relief. Nonetheless, at the appropriate time the City will file a motion for preferential setting under § 54.014 of the Texas Local Government Code.

2.04. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose, within thirty (30) days of the service of this petition, the information and/or material described in Rule 194.2.

## III.
## PARTIES

3.01.    The City is a general law municipality formed under the Constitution and laws of the State of Texas, whose City Hall is located at 201 N. Buffalo Street, Canton, Texas, in Van Zandt County, Texas.

3.02.    Defendant New Beginnings Fellowship Church of Houston, Texas ("NBFCH") is a Texas corporation with a registered mailing address at P.O. Box 310841, Houston, Texas 77231-0841. NBFCH may be served through its registered agent, Mr. Barney J. Donalson, Jr., at 11520 Burdine Street, Houston, Texas 77035, or wherever it may be found.

3.03.    Defendant Barney Joe Donalson, Jr. ("Donalson") is a Texas resident who operates the property and business entities in the City of Canton, Texas, that are the subject of this suit, with a stated physical address of 11520 Burdine Street, Houston, Texas 77035. Donalson may be served at 673 W. College Street, Canton, Texas, or 901 W. College Street, Canton, Texas 75103, or at 11520 Burdine Street, Houston, Texas, or wherever he may be found.

3.04.    Defendant Covenant Community of New Beginnings Fellowship/Canton ("CCNBFC") is an assumed name and alter ego of Barney Joe Donalson, Jr.[1] with physical addresses of 673 W. College Street, Canton, Texas[2] 75103 and 11520 Burdine Street, Houston, Texas 77035. CCNBFC may be served through Mr. Barney J. Donalson, Jr., at 673 W. College Street, Canton, Texas, or 901 W. College Street, Canton, Texas 75103, or at 11520 Burdine Street, Houston, Texas, or wherever it may be found.

---

[1] An April 10, 2019, Assumed Name filing in Van Zandt County, Texas, purports to show CCNBFC as a "non-profit association," however, both the filing and Donalson's testimony before the City Council hearing of May 16, 2019, confirm that Donalson is the sole owner of CCNBFC and that CCNBFC is an assumed name of Donalson.

[2] The property was formerly known by its address of 901 W. College Street, Canton, Texas, prior to address updates performed by the local 9-1-1 authority. Some documents, including the Van Zandt County Appraisal District's documents and Defendants' own identification of the property, continue to use the 901 W. College Street address.

## IV.
## JURISDICTION AND VENUE

4.01.   Jurisdiction and venue are proper in this Court under Sections 54.012, 54.013 and 54.017 of the Texas Local Government Code, and because the City seeks costs and damages in excess of the minimum jurisdictional requirements of this Court.  Further, this Court has subject-matter jurisdiction over this controversy because: (a) the costs, damages and civil penalties sought are within the jurisdictional limits of this Court; (b) Defendants' actions were committed in this county and this state; and (c) the Property is located in this county and this state.  *See* TEX.GOV'T CODE ANN., §§ 24.007, 24.008; Tex.R.Civ.P. 47(b).

4.02.   Venue is proper in Van Zandt County, Texas, because it is the county in which all or a substantial part of the events giving rise to the City's claims occurred, and is the county of one or more Defendants' residence or principal office at the time the causes of action accrued. TEX.CIV.PRAC. & REM. CODE ANN., §§ 15.002(a)(1), (2), (3); 15.005; 15.015.  Further, venue is proper in Van Zandt County, Texas, because it is the county in which the municipality bringing this action is located.  TEX.LOC.GOV'T CODE ANN., § 54.013.

## V.
## STATEMENT OF FACTS

A.   **Nature of the Case**

5.01.   This case is brought pursuant to Chapter 54, Subchapter B, Sections 54.012 through 54.020 of the Texas Local Government Code; seeking a temporary restraining order, temporary and permanent injunctive relief, declaratory judgment and civil penalties for violations of City building, electrical and fire safety codes at a large substandard and dangerous structure located at 673 West College Street, f/k/a 901 West College Street, in Canton, Texas, legally described as a 4.808 acre tract of land situated in the Heritage Manor Addition to the City

of Canton, in the J. Stockwell Survey, Abstract No. 760, Van Zandt CAD ID# R000000243 (the "Property"). Defendants have refused to comply with City ordinances and long-established fundamental building, electrical and fire safety codes. As a result, the building is substandard and unsafe for human occupation or residency unless and until the building is brought into compliance with applicable code provisions.

5.02. The Property lacks dedicated electrical service and is serviced by direct-current solar power connected into an existing and outdated alternating-current electrical system that was never designed for, nor is said system appropriate for, direct current electric input. Defendants have refused to have a licensed electrician perform the work necessary to obtain electric service, or to certify the safety of Defendants' current solar direct-current/alternating current hybrid system. Defendants have refused to provide an acceptable asbestos survey, despite the known presence of asbestos-containing material at the Property. Defendants refuse to install fire alarm and sprinkler systems. Defendants have failed to remediate substantial water damage, mold and mildew in the Property. Defendants have failed to install working climate control equipment. Defendants have allowed persons to work and stay overnight in the Property, despite knowledge of these and other substandard and dangerous conditions, and in violation of the City's Notice of Condemnation, which notice was upheld on appeal. And perhaps most dangerous, Defendants have "strongly recommended" that the intended future residents of the Property use propane gas in their rooms for heating purposes, and connect rooftop solar panels to the existing electrical system using extension cords strung out of windows, or through non-code compliant wiring that pierces through wall and ceiling fire barriers.

5.03. Under Chapter 54 of the Texas Local Government Code, the City may bring a civil action to enforce its ordinances for the preservation of public safety relating to the materials

or methods used to construct a building or other structure or improvement, including the electrical wiring or apparatus, climate control equipment, interior and exterior structural elements, and also relating to dangerous or deteriorated structures or improvements. TEX.LOC.GOV'T CODE ANN., § 54.012(1) and (6). The substandard and dangerous condition of the Property was caused by and continues to be maintained by Defendants' refusal to comply with City ordinances and well-established and widely-adopted building and electrical codes designed to protect life and property. The condition of the Property presents a threat to the health, safety and welfare of the citizens of Canton, and especially to persons entering into, or living in, the Property.

5.04. Defendants have thrown up smokescreen after smokescreen in an attempt to obscure their continued refusal to comply with City ordinances and applicable building, electrical and fire safety codes. Defendants argue their church is not subject to such ordinances and applicable building, electrical and fire safety codes. It is. Defendants argue the Property is not subject to such codes. It is. Defendants argue their low-cost non-code compliant electric, gas, plumbing and other workarounds are sufficient. They are not. Defendants' continuing shifting arguments that attempt to justify their actions, in response to City health and safety requirements, are without merit in fact or law.

5.05. As will be demonstrated below and in the evidence to be presented at trial, the Property has been without adequate electrical and plumbing systems, adequate fire alarms and sprinklers, working HVAC equipment, and has been contaminated with mold and mildew, since at least September 2017. Despite claiming to have worked on the Property every weekend since then, these serious health and safety issues remain, and in some cases – including the electrical system and the presence of asbestos-containing material at the Property – the conditions have

been worsened by Defendants.

5.06.   Defendants have blatantly and repeatedly disregarded and ignored the City's continued efforts to work with Defendants to obtain voluntary compliance with the City's ordinances and codes, leaving the City with no choice but to invoke this Court's jurisdiction to provide the relief necessary to uphold the integrity of the City's building, property maintenance, fire, health and safety regulations.   These regulations were passed to protect property values, promote neighborhood values and community rights, and to advance the health, safety and general welfare of the City and its residents.

5.07.   Despite the City's efforts, Defendants have refused to work with the City or comply with the City's ordinances and codes.   Instead, Defendants argue that City ordinances and applicable building, electrical and fire safety codes do not apply to them or their Property. Alternatively, Defendants have attempted to install bargain basement workarounds that do not comply with applicable health, safety and welfare codes. Alternatively, Defendants argue that the very individuals whom Defendants purport to seek to help are liable for the conditions on the Property that violate applicable health, safety and welfare codes as opposed to Defendants being responsible for the violations.   What Defendants have not done, and continue to refuse to do, is undertake any meaningful efforts to comply with City ordinances and applicable codes integral to protecting public health, safety and welfare at the Property.

**B.      The Property**

5.08.   The Property that is the subject of this action, and which is involved in the violations asserted herein, is located at 673 West College Street, f/k/a 901 West College Street, Canton, Texas 75103, and is more particularly described as a tract of land situated in the Jesse Stockwell Survey, Abstract No. 760, Van Zandt County, Texas, and being the same tract of land

conveyed to Heritage Manor of Blaylock Properties, Inc., by Charles C. Blaylock , et al., Lloyd D. Blaylock, recorded in Volume 829, Page 86 of the Deed Records of Van Zandt County, Texas. The Property is located within the municipal limits of the City of Canton, Texas, in Van Zandt County, Texas.

5.09.   The Property is a long vacant former nursing home facility that ceased operations on or about November 2013. The Property is not currently zoned for residential use, and was not zoned for residential use at the time that the Defendants bought the Property. Prior to Defendant's acquisition of the Property, it was not maintained and instead required substantial work to comply with current building, electrical and fire safety codes at the time it was purchased. In fact, the Property had deteriorated to the point where the former operator determined it was cheaper to build a new nursing home facility than to bring the Property up to code. Water and electrical service accounts were closed in or around August 2014.

5.10.   In August 2015, the realtor for the Property sought a general contractor quote for the work necessary to rehabilitate the Property to serve as a transitional living facility consisting of fifty-five (55) double occupancy rooms, multiple common living areas, on-site classrooms, functional commercial kitchen, laundry and five (5) communal restrooms including toilet and shower facilities. The contractor stated that the Property would require substantial renovations and rehabilitation costing an estimated amount at over a quarter of a million dollars. These repairs included repairing and replacing gutters and drainage systems to prevent further mold damage, replacing around two hundred (200) moldy and water damaged sheets of drywall, updating electrical fixtures and wiring, rehabilitating plumbing systems, and installing sprinkler and fire safety equipment. Another bid to get the Property into operable condition as a nursing

home listed a total of $455,000, which included $87,000 for "sprinklers and fire safety," but which expressly excluded "abatement of mold and asbestos."

5.11.   The City cited the former Property owners Donna Bega and the Chapman House for code violations at the Property. The citations failed to bring the Property into compliance.

5.12.   On December 3 and December 9, 2015, the City held a hearing to determine whether the Property violated City ordinances, whether the Property was substandard, and whether the Property should be demolished. The hearing was held before the City Building Inspector and Fire Captain. The former Property owners attended the hearing, but presented no evidence to controvert the City's findings that the structure was substandard. After hearing all of the evidence presented, the City issued an order stating that the Property violated City ordinances, the Property was substandard, and that the Property should be demolished within thirty (30) days of the order. Because of potential procedural problems with the hearing, that order was not carried out, but the hearing and citation history of the Property remained matters of public record.

5.13.   On September 29, 2017, despite the history of the Property, and despite its substandard condition, Defendant NBFCH purchased the Property. NBFCH recorded a Corporate Resolution (the "Resolution") along with the Property Deed. The Resolution lists Defendant Barney J. Donalson, Clifford Clarke and David L. Babb as the "sole Board of Directors" of NBFCH. Donalson signed the Resolution for NBFCH. Since September 2017, NBFCH has been listed as the sole owner of the Property on the records of the Van Zandt County Appraisal District.

5.14.   On April 3, 2019, NBFCH filed a document entitled "Master Deed and Declaration Creating Religious Covenant Community and Condominium Property Regime"

("Master Deed") for the Property, purporting to convey certain portions of the Property to Defendant CCNBFC, and purporting to establish a "condominium regime" for "55 residential units" located in the Property.[3] Donalson signed the Master Deed on behalf of NBFCH.[4] While NBFCH, citing Matthew 25:35-26, states that it is a "ministry devoted to helping the homeless and other needy individuals with sustenance, shelter, and other resources necessary to regain their footing and start life anew," the Master Deed reveals a plan replete with danger for the future inhabitants of the Property. For example, the Master Deed:

1. Purports to subdivide the former nursing home Property into 55 "Residential Units" consisting of a single unfurnished room that includes a sink, and toilet closet. These Residential Units would then be sold to "financially stable individuals who are not going to actually live on site, but rather who will rent out their unit to troubled family members or others who show a need for shelter." This Master Deed was filed despite the Property not being zoned for residential use.

2. Notes that the Residential Units are not currently tied to the main electrical power grid, and strongly encourages unit owners to install a solar panel generation system on the roof above their unit, and – in a shocking violation of both fire and property maintenance codes, and contrary to common sense – encourages the use of propane heaters in the rooms. The Master Deed also tacitly admits that no central HVAC facilities or even water heaters are provided but encourages window A/C unit and solar water heater usage.

5.15. On April 10, 2019, Donalson filed an Assumed Name Certificate identifying himself as the sole owner and operator of a "Texas non-profit association" named Covenant Community of New Beginnings Fellowship/Canton (CCNBFC).

---

[3] A copy of the Master Deed and Declaration Creating Religious Covenant Community is attached as **Exhibit 1**.

[4] The City does not believe that this document is a valid transfer of a real property interest in the Property. Furthermore, the City notes that it included a Texas Local Government Code § 54.005 statement to NBFCH in its notices of violation, because that entity was listed by the Van Zandt County Appraisal District as the sole owner of the Property. Despite the Tex.Loc.Gov't Code § 54.005 notice, NBFCH never provided the requisite affidavit listing any other owners of the Property, and thus, NBFCH is understood to be the owner of the Property "for all purposes to which the notices relate." Tex. Loc. Gov't Code § 54.005(g).

PLAINTIFF CITY OF CANTON'S ORIGINAL PETITION, AND VERIFIED APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND CIVIL PENALTIES -                                    **Page 11**

C.    **City Ordinances**

5.16.    The City is a general law municipality formed under the Constitution and laws of the State of Texas, and pursuant to state law has the power to enact municipal legislation in the form of ordinances in the interest of and for the well-being of its inhabitants. In particular, the City has the right and power to regulate residences and residential property in the City, including regulations that concern the health, safety and welfare of its citizens, and to define and prohibit any nuisance within the limits of the City. The City may enforce all ordinances necessary to prevent and summarily abate and remove a nuisance. *See, e.g.,* TEX.LOC.GOV'T CODE ANN., Chapter 51, Subchapters A and E; Chapter 54; and Chapter 217, Subchapter C; City Code, Title XV Land Use, Chapter 150 Codes Adopted, Section 150.16; City Code Title XV Land Use, Chapter 151, Buildings, Sections 151.01, 151.02, 151.03, 151.04, 151.05, 151.06 and 151.07. The Court may take judicial notice of these state law provisions and the City's ordinances.

5.17.    The City has adopted ordinance provisions adopting international and standard building, electrical and fire safety codes. *See* City Code, Title XV Land Usage, Chapter 150, Codes Adopted, Section 150.16.

5.18.    The City has adopted ordinance provisions that prohibit nuisances in the City such as those posed by the Property. *See* City Code Title XV Land Usage, Chapter 151 Buildings, Sections 151.01, 151.02, 151.03, 151.04, 151.05, 151.06 and 151.07.

5.19.    Each of the above-referenced provisions of state law and of the City Code are applicable to Defendants' actions and inactions that give rise to the instant cause. Defendants have failed and refused, and continue to fail and refuse, to cease the illegal, substandard and dangerous condition of the Property in response to the City's notices and other efforts to gain compliance by Defendants with the City's ordinances and applicable building, electrical and fire

safety codes.

**D.     Violations at the Property**

5.20.   The Property has lacked adequate electrical service since 2014.  Oncor terminated service to the Property on or about August 19, 2014.  Intending to completely disconnect the service, Oncor inadvertently only partially disconnected service to the Property.  Upon receiving Defendants' request to activate service, Oncor recognized this mistake and informed Defendants that the Property must pass a City inspection prior to re-energizing the Property.

5.21.   A third-party master electrician contracted with the City (the "City Inspector") and inspected the Property on October 3, 2017.  Following the inspection, the City Inspector explained that the Property's electrical system did not comply with current electrical codes, and identified fifteen (15) separate deficiencies.  These issues "present shock and fire hazards to [the Property]" and could not be repaired, but had to be replaced to meet current code requirements.  The City Inspector informed Defendants that electrical service at the Property should not be turned on until these issues were rectified.

5.22.   Defendants were informed that if they wished to challenge the City Inspector's findings, they needed to submit a written appeal to the City's Board of Adjustments and Appeals in accordance with Chapter 151 of Canton's City Code.

5.23.   Defendants never submitted a written appeal of the City Inspector's findings to the Board of Adjustments and Appeals.

5.24.   The City also informed Defendants that City ordinances and state law require that Defendants must obtain an electrical work permit, and that according to the Texas Department of Licensing, all electrical work done in the State of Texas must be done by a licensed electrician.

5.25.   The City acknowledged that Defendants had performed such work without a

permit and that the work was not done by a licensed electrician, and that such actions would subject Defendants to double permitting fees. Nevertheless, the City offered to waive the double permit fees and meet with Defendants to help them obtain voluntary compliance.

5.26.    Shortly afterwards, Defendants informed the City that they obtained donated solar panels and a generator to provide electrical service to the building. Defendants claimed that the City told them that they did not need a permit for the panels if they were not permanently connected to the building.    Defendants claimed that the since they did not screw in the solar panels to the roof, but rather just weighed them down with heavy bricks, they were not permanently attached to the building, and therefore a permit was not needed.

5.27.    In October 2018, when the solar panels failed to provide sufficient electrical power, Defendants attempted to get Oncor to install a temporary electrical pole and planned to run extension cords directly from the pole to provide electrical service at the Property.

5.28.    The City explained that Defendants would need to submit construction plans to obtain a new power source at the Property.  The City's Commercial Plans Submittal Guidelines require that applicants submit a completed building plan application, two sets of building plans, an asbestos survey pursuant to Texas Asbestos Health Protection Rules (TAHPR) and the National Emissions Standards.

5.29.    In November 2018, the City received information that one or more persons may be spending the night at the Property.  Defendants did not have a Certificate of Occupancy permitting individuals to reside at the Property.  On November 11, 2018, the City Police Department approached the Property and encountered individuals who admitted they were residing there.  There was no electrical service to the Property at this time, and it was otherwise unfit and unsafe for occupancy.  At this point, it became clear that Defendants were actively

proceeding with work and occupancy of the Property despite not having secured the proper City permits and in spite of the dangers posed to workers and occupants of the Property.

5.30.   On March 2, 2019, the City Police Department approached the Property after seeing a truck backed up to the open front doors of the Property.   Despite still not having obtained any permits from the City or submitting construction plans to the City, Defendants were observed working on the building.   There was still no electrical service to the Property at this time, and the Property did not have proper fire protection equipment needed to render it safe for occupancy.

5.31.   On March 26, 2019, the City executed an Administrative Search Warrant on the Property.   A third-party inspector, Bureau Veritas, a recognized international leader in code enforcement and building code matters, had a Certified Building Inspector, Master Fire Inspector and Master Electrician inspect the Property.

5.32.   During its inspection, Bureau Veritas identified a multitude of serious issues, including:

> 1) open electrical boxes throughout the structure;
> 2) multiple broken windows;
> 3) significant accumulation of combustible products inside and outside the structure;
> 4) open gas piping;
> 5) open interior walls and ceilings;
> 6) inoperable fire alarm system;
> 7) lack of fire sprinkler system;
> 8) improper storage of flammable liquids and gas containers;
> 9) non-compliant generators;
> 10) non-compliant emergency exits;
> 11) presence of mold and mildew;
> 12) inadequate plumbing systems;
> 13) inadequate electrical systems;
> 14) lack of working climate control systems;
> 15) possible presence of asbestos; and
> 16) fire rating on building components not to code.

Bureau Veritas also noted in its report that: "[an asbestos testing] report must be submitted to the City prior to the issuance of a building permit," and that "it is also recommended that the owner have a design professional evaluate the building and grounds for all appropriate code disciplines (including the electrical systems, HVAC systems, plumbing systems, gas systems, the building assemblies and the fire suppressant system) for compliance to adopted codes and provide these analysis (sic) to the city for review prior to the issuance of a building permit."[5]

5.33.   During the March 26, 2019, inspection, City code enforcement officials conducted their own, separate review of the Property and uncovered disturbing findings that mirrored those of Bureau Veritas.   Although not exhaustive, photographic evidence was taken showing:

> 1) use of compressed propane tanks in interior spaces and in proximity to electrical cords[6];
> 2) D/C into A/C electrical system wiring, wiring through firewalls/ceiling space in contravention of applicable codes[7];
> 3) storage of broken tiles (some of which may comprise asbestos-containing material) (ACM) admitted to be onsite by Defendants)[8];
> 4) open electrical panels and wiring not conforming to code[9];
> 5) improper storage of combustible liquids[10];
> 6) illegally secured fire exits[11];
> 7) solar panels temporarily affixed to roof with cinder blocks and use of extension

---

[5] A copy of the report is attached as **Exhibit 2**.   After review, Bureau Veritas noted that violation No. 4, "open gas piping," was unfounded because the pipe believed to be a gas pipe was in fact a water pipe.   Nevertheless, the other concerns remain.

[6] Two (2) photographs are collectively attached as **Exhibit 3**.

[7] Four (4) photographs are collectively attached as **Exhibit 4**.   The photographs also show the quality of the volunteer electrical labor and the proximity of electrical wiring to water sources.

[8] One (1) photograph is attached as **Exhibit 5**.

[9] Three (3) photographs are collectively attached as **Exhibit 6**.

[10] One (1) photograph is attached as **Exhibit 7**.

[11] One (1) photograph is attached as **Exhibit 8**.

cords out of windows[12];

8) extensive and pervasive black mold and water damage[13];

9) out-of-date and inoperable fire protection equipment[14]; and

10) improper storage of trash and debris, some of which may comprise ACM.[15]

5.34.    Following these findings, the next day, March 27, 2019, the City issued a Notice

of Condemnation of the Property stating that, in accordance with Section 108.1 of the 2015

International Property Code, the City had found the Property: (1) to be an unsafe structure; (2)

contains unsafe equipment; (3) is unfit for human occupancy; (4) is an unlawful structure; and

(5) is a dangerous structure.[16]  The Notice of Condemnation provided Defendants with thirty (30)

days to remedy the identified issues, and reminded Defendants that permits were required for

much of the work, and that a licensed electrician and plumber must complete the electrical and

plumbing work.

5.35.    On April 16, 2019, Defendants formally appealed the City's Notice of

Condemnation.[17]  In the Notice of Appeal, Defendant Donalson asserts that "while the Church

maintains ownership of the center portion of the building," the Covenant Communities of New

Beginnings Fellowship now owns and is responsible for the maintenance of all common areas of

the east and west wings of the property.  The rooms on the east and west wings, known as

Residential Units, are being sold.  As of this date [April 16, 2019], 27 of the 55 rooms are either

---

[12]  Three (3) photographs are collectively attached as **Exhibit 9.**

[13]  Six (6) photographs are collectively attached as **Exhibit 10.**

[14]  Two (2) photographs are collectively attached as **Exhibit 11.**

[15]  Three (3) photographs are collectively attached as **Exhibit 12.**

[16]  A copy of the Notice of Condemnation is attached as **Exhibit 13.**  The Notice also contains a statement under Texas Local Government Code § 54.005 that NBFCH was the sole record owner of the property as noted by the Van Zandt County Appraisal District.  No affidavit refuting this information was ever filed by NBFCH.  Bureau Veritas' preliminary findings resulting from the March 26, 2019, search are also attached to this exhibit.

[17]  A copy of the Notice of Appeal is attached as **Exhibit 14.**

under contract or have been sold by written deed to individual owners." The Notice also contains the following admissions regarding the condition of the Property:

(a)      Defendants were attempting to remedy the mold conditions not by replacing the drywall, but instead were applying a topical treatment and painting over it.

(b)      Defendants had removed gas service from the building, rendering gas-based central heating systems and water heaters useless.

(c)      Solar panels attached to the roof are not permanently placed, but instead "weighted down with bricks," to avoid complying with permitting requirements. It is admitted that DC power is routed into the building's AC-designed system by extension cords.

(d)      Defendants used a sledge hammer to "break . . .apart" a fire door. Given the age of the building, this may have exposed those involved to significant amounts of friable asbestos fibers.

(e)      The Property has no functioning HVAC unit. Defendants wrongly claim that "there is no legal requirement that our building be air-conditioned."

(f)      Smoke detectors and fire alarm systems are inoperable, and the sprinkler systems reach only the utility portions of the building (water heater closets, laundry, and mechanical rooms). According to Defendants, however, this situation "fully satisfies the law applicable when the building was constructed and is thus grandfathered."

5.36.   A hearing on Defendants' appeal of the City's Notice of Condemnation was held on May 16, 2019, before the Canton City Council.

5.37.   The Canton City Council upheld all of the City's findings stated in the Notice of

Condemnation.[18]

5.38.    To date, Defendants have failed to obtain any permits from the City to abate the issues identified in the City's Notice of Condemnation.   Moreover, Defendants improperly removed the City's posted notice of no occupancy on the Property, and continue to occupy, and allow occupancy of, the Property by individuals.

5.39.    Upon information and belief, to date Defendants have failed to obtain the services of a licensed electrician and licensed plumber to perform all necessary electrical and plumbing work.

5.40.    Upon information and belief, to date Defendants have failed to abate any of the issues and violations identified in the City's Notice of Condemnation.

5.41.    Upon information and belief, to date Defendants have failed to halt working on the Property despite not having obtained any required permits from the City, and despite the clear language in the Notice of Condemnation that the Property is a prohibited property and that no further work may be done without securing applicable permits in advance of performing the desired work.[19]

5.42.    To the best of the City's knowledge, to date, Defendants continue to have persons reside at the Property despite not having obtained the required Certificate of Occupancy.

E.       **Defendants' Repeated Attempts to Evade Compliance**

5.43.    Despite acknowledging that the Property had substantial issues after being vacant

---

[18] A copy of the City Council's Order upholding the March 27, 2019, Notice of Condemnation is attached as **Exhibit 15**.

[19] In fact, Defendants have continued to perform unpermitted work on the Property, and have received a subsequent Notice of Violation for unpermitted gates constructed across the Property (which gates could impede the ability of emergency response vehicles to enter the Property), and for an illegally erected antenna, (which, in addition to needing a Specific Use Permit (SUP), which Defendants have not applied for, is subject to airport safety verifications that have not been performed).

for years, Defendants have refused to comply with City ordinances and applicable building, electrical and fire safety codes.

5.44.   Defendants have asserted that as a church they are not subject to City ordinances and applicable building, electrical and fire safety codes.  Neither the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"), nor the state Texas Religious Freedom Restoration Act ("TRFRA"), exempt Defendants from compliance with the City's health and safety ordinances and codes applicable to the Property, which health and safety codes comprise basic life, health and safety regulations applicable to all structures as a matter of law.

5.45.   Defendants have asserted that since the Property was originally constructed in 1971, it is not subject to current City ordinances and applicable building, electrical and fire safety codes.  Notwithstanding Defendants' assertion, Defendants have also acknowledged that the Property needed substantial rehabilitation to make it usable for their intended purposes. Given the need for substantial rehabilitation—which need was noted long before Defendants ever acquired the Property—Defendants must perform all rehabilitation efforts to come into compliance with current building, electrical and fire safety codes.  Defendants' argument that the Property is somehow exempted from compliance with the City's health and safety codes due to its age is also ineffective for two further reasons:  (1) the City's Inspector informed Defendants that the Property even failed to comply with electrical codes that were in place during 1971; and (2) significant substandard work has been performed by the Defendants in the interim, creating the need for a licensed electrician to certify that the system, as modified by Defendants, is safe to energize.

5.46.   Defendants have asserted that the contractor who installed the original electrical system in 1971 told them that the Property was built to code, with the minor exception of some

illegal "piggyback" breaker boxes being added by the previous owner. Defendants claimed that because of the 1971 contractor's statements, the City Inspector's findings were incorrect. To reiterate, the City Inspector identified substantial electrical system deficiencies even when analyzed using the 1968 National Electric Code. Additionally, Defendants and the 1971 contractor both acknowledged the presence of illegal and non-compliant electrical work at the Property.

5.47. Defendants have asserted that Donalson did not need a permit to perform electrical work because Donalson was exempt from such requirements, claiming Donalson to be a maintenance person performing electrical services for a business, pursuant Section 1305.003(8) of the Texas Occupations Code. The statute cited by Defendants applies only to a person "regularly employed as a maintenance person or maintenance electrician for a business." TEX.OCC. CODE ANN., § 1305.003(8). Contrary to Defendants' claim, Donalson is not an employee of NBFCH or CCNBFC. The evidence further establishes that Donalson signed the Corporate Resolution on behalf of NBFCH, and signed all of the property record instruments. The evidence further establishes that Donalson signed the Assumed Name Certificate of the entity that purports to "operate" the Property. In these documents, Donalson is consistently referred to as a Board Member, or the Chairman of the Board. Additionally, Donalson claimed to have standing to file a Motion to Rescind and/or Void an Administrative Search Warrant as "a minister," "a member of the board of directors," and "owner of New Beginnings Houston a separate nonprofit entity that operates several ... homeless shelters owned by the church." Additionally, Donalson has personally contradicted his own claim, telling the City on at least one occasion that "volunteers" performed the subject electrical work. By his own words and actions, therefore, Donalson has established that he is not, nor has he ever been, an employee of NBFCH

or CCNBFC.  Donalson, therefore, does not fall within provisions of § 1305.003(8) of the Texas Occupations Code to avoid compliance with electric permit requirements.[20]

5.48.   Defendants have installed dangerous workarounds to avoid complying with City ordinances and applicable building, electrical and fire safety codes.  To reiterate, Defendants tried to obtain a temporary electric pole to be located near the Property, whereby they could purportedly directly plug in extension cords to obtain electricity in the Property.  Defendants have used bricks instead of screws in an attempt to secure solar panels on the roof in order to avoid permit requirements.  Defendants refused to submit a full asbestos survey to the City, despite having third-party certification that asbestos-containing material was present at the site, and despite having admitted, during the aforementioned May 16, 2019, appeal hearing, that Defendants were not providing asbestos-protective equipment to their "volunteer" laborers. Furthermore, Defendants have "strongly encouraged" their potential residents "to install a photo voltaic (solar panel) power generation system on the roof above their unit" and "to purchase a propane heater and to replace existing obsolete air conditioning equipment with a new energy efficient window unit."  These shortcuts do not comply with City ordinances and applicable building, electrical and fire safety codes, and present substantial health and safety issues and violations.

5.49.   Defendants have attempted to further thwart the City's efforts to enforce its health and safety codes by attempting to intimidate the City's inspector, making unfounded allegations to the City Council, and to City management, that the City's inspector was corrupt, unqualified for his position, and lied about his inspection of the Property.  Defendants also directly

---

[20] Moreover, even if § 1305.003(8) of the Texas Occupations Code were applicable, the Defendants' argument would still be moot.  The type of work needed to bring the Property into compliance comprises extensive renovation of the electrical system.  And the Defendants have connected further non-compliant D/C current into the A/C-designed system.  Thus, there is a significant health and life safety issue with the electrical system that requires review by a licensed professional before the system can be safety energized and/or converted back to an A/C system.

threatened the City's inspector with arrest should he attempt to enter the Property at any time for any reason.  Despite these actions of Defendants, and in order to provide a neutral, third-party opinion, the City retained Bureau Veritas to inspect the Property, who found numerous life safety and health violations at the Property, consistent with the City Inspector's findings.

5.50.   Defendants have further attempted to intimidate the City and its citizens, telling City personnel that:

> [w]e are going to be running an ad next week seeking claimants for a class action against Canton.  Every individual in Houston left homeless after Hurricane Harvey who could have been provided shelter at this facility had not [the City inspector] caused our electricity to be turned off has a claim.  Canton wants to fight.  They will get it.  Wait until we get a bus and start picking up all the homeless people in Houston currently living under freeway bridges.  Giving them a free room here.

Defendants later posted a Craigslist advertisement following through on the above statement. The Defendants, through Donalson and CCNBFC, also filed a lawsuit against the City and City officials, which is pending in federal district court, to further Defendants' intimidation and obstructive efforts.

5.51.   Even more reprehensibly, Defendants have purportedly taken action in an attempt to shift liability for Defendants' violations on the Property onto the shoulders of very people Defendants purport to serve.  On April 2, 2019, Defendants informed the City that the alleged residential portions of the Property had been conveyed to a new "management association established under the name 'Covenant Community of New Beginnings Fellowship/Canton' . . . [and that] [m]ost of the individual rooms have been sold; they are no longer owned by the Church . . . [therefore,] [e]ach owner of each unit is responsible for the condition and repair of the interior boundaries of their unit."  The next day, Defendants executed a Master Deed and Declaration Creating Religious Covenant Community and Condominium Property Regime

("Master Deed"), in which Defendants claim that the individual owners of each residential unit "are responsible for all costs associated with inspections and/or permits necessary for them to occupy their [r]esidential [u]nits." According to this Master Deed, if individual owners want to connect directly to the electrical grid, they "must do so at their own cost, subject to any permitting and other applicable regulations." Despite these disclaimers, and despite the fact that the Property is not zoned for residential use, the Defendants claim to have "sold" well over half of the "55 Residential Units" to third parties. Van Zandt County Appraisal District records show, however, only one owner of the Property: New Beginnings Fellowship Church of Houston.[21]

5.52. Defendants have blatantly and unabashedly told the City that they do not care about City ordinances or state law. When told that they needed a permit and licensed electrician to perform the electrical work, Defendants told the City that "it would be ideal for an electrician to do the work," but refused to comply with the requirement, asserting that "who did the work, what code applies, or whether the city was paid for a permit is completely irrelevant." Defendants' obstreperous, combative and unlawful actions require this Court's intervention.

F.    **Summary**

5.53. Defendants are in violation of City ordinance provisions including, but not limited to, the following: City Code Title XV Land Usage, Chapter 150 Codes Adopted, Section 150.16,

---

[21] A copy of the Van Zandt County Appraisal District account documents for the Property is attached as **Exhibit 16.** The lack of any filing of the purported "sales" deeds with the appraisal district raises the question of whether the Defendants are actively seeking to conceal these transactions, while profiting from the "sale" of the "Residential Units." Two possible motives for this concealment are: (1) maintaining their tax exemption as a religious use when, in fact, the Property may now be substantially owned by private "third party" investors and/or by Defendant Donalson in his alter ego as Covenant Communities of New Beginnings Fellowship/Canton, and (2) avoidance of a property reverter clause in the acquisition documents. In their federal lawsuit against the City, the NBFCH-related parties state that "the conveyance [of the Property] included conditions that the building would not be re-conveyed or demolished, and that it would be used for charitable purposes for at least 20 years." Yet Defendants have admitted to at least twenty-six (26) re-conveyances to private individuals in their correspondence with the City.

and City Code Title XV Land Usage, Chapter 151 Buildings, Sections 151.01, 151.02, 151.03, 151.04, 151.05, 151.06 and 151.07.  Notwithstanding the City's efforts to bring Defendants into compliance with these City ordinances and applicable building, electrical and fire safety codes, Defendants have failed and refused to correct, remedy or otherwise abate the violations that exist on the Property.  Defendants continue to fail and refuse to bring the Property into compliance with City ordinances and code integral to protecting public health, safety and welfare, thereby creating a serious threat to not only the Defendants, but also to the City, and to other persons living in the Property and in the vicinity of the Property, and any member of the public who visits the Property.  Defendants have not corrected or remedied these defective conditions even though Defendants acknowledged that they have been aware of these problems since purchasing the Property on September 29, 2017.

5.54.  Defendants' failure to comply with City ordinances and applicable building, electrical and fire safety codes not only constitutes a violation of the City's ordinances and of state law, but also creates a substantial danger of injury and an adverse health, safety and welfare risk to other persons and property.  Defendants' actions and inactions are violations of City ordinances and codes for which a civil action may be brought under Subchapter B of Chapter 54 of the Texas Local Government Code (TEX.LOC.GOV'T CODE ANN., §§ 54.012- 54.020).

5.55.  By this suit, the City seeks a temporary restraining order, and temporary and permanent injunctive relief, as authorized by § 54.016 of the Texas Local Government Code, immediately restraining and enjoining Defendants, their employees, servants, contractors, volunteers, successors and assignees, and any person in active concert or participation with Defendants, as follows:

(1) immediately closing the Property, vacating the Property of all persons and preventing

anyone from entering the Property for any reason, until after Defendants comply with the City's Commercial Plans Submittal Guidelines for remodel/renovation, which, *inter alia,* include submitting a complete set of construction plans indicating work that has been completed since Defendants purchased the Property, and all work Defendants intend to perform on the Property from this point forward, as well as submitting a complete asbestos survey in accordance with Texas Asbestos Health Protection Rules (TAHPR) and the National Emissions Standards;

(2) prohibiting Defendants from performing any work on the Property until after Defendants obtain all required permits from the City;

(3) immediately prohibiting anyone from residing in the Property for any period of time, and all persons shall immediately vacate the Property until after Defendants obtain a Certificate of Occupancy for the Property from the City; and

(4) prohibiting Defendants from selling, transferring, or otherwise conveying any interest in the Property without giving the requisite notice of violations and securing waivers from the receiving party.

5.56.   After final hearing, and pursuant to Sections 37.001-.011 of the Texas Civil Practice and Remedies Code, the City requests that the Court declare that Defendants have violated state law and City ordinance provisions, including but not limited to those referenced herein, and that the City is entitled to the temporary and permanent injunctive relief requested in this action.

5.57.   After final hearing, and pursuant to Section 54.017 of the Texas Local Government Code, the City requests that the Court award to the City civil penalties from Defendants as are established by the evidence presented at trial.

5.58.   After final hearing, and pursuant to Section 37.009 of the Texas Civil Practice and

Remedies Code, the City requests that the Court award the City's costs and reasonable and necessary attorney's fees as are equitable and just.

## VI.
## COUNT ONE:
## REQUEST FOR TEMPORARY RESTRAINING ORDER

6.01.   The City re-alleges paragraphs 5.01 through 5.58, above, as if repeated verbatim.

6.02.   Chapter 54 of the Texas Local Government Code provides that the City may seek a writ of injunction against the owner or person with control over the premises at issue, to prohibit conduct in violation of a City ordinance, upon "a showing of substantial danger of injury or an adverse health impact to any person or to the property of any person other than the defendant." TEX.LOC.GOV'T CODE ANN., § 54.016(a).

6.03.   Chapter 54 does not require the City to prove that another adequate remedy or penalty for the City ordinance violation(s) exists at law to obtain injunctive relief. TEX.LOC.GOV'T CODE ANN., § 54.016(b).  Chapter 54 also does not require the City to prove that it has sought or obtained a criminal conviction for such City ordinance violation(s).  *Id.*

6.04.   Defendants, as owners and operators of the Property, have violated City ordinance provisions including, but not limited to, the following: City Code Title XV Land Usage, Chapter 150 Codes Adopted, Section 150.16, and City Code Title XV Land Usage, Chapter 151 Buildings, Sections 151.01, 151.02, 151.03, 151.04, 151.05, 151.06 and 151.07, by maintaining unhealthful and dangerous conditions on the Property.  Defendants, as owners and operators of the Property, have violated state law and City ordinances by failing to maintain the Property in accordance with all applicable legal requirements.  Defendants, therefore, have caused, by action or inaction, unhealthful and dangerous conditions to exist on the Property that are injurious to the health, safety and welfare of the residents of the surrounding neighborhood, the citizens of

Canton, and any member of the public who visits the Property.

6.05.   By Defendants' own statements, several individuals have begun residing at the Property, despite Defendants failing to address the repeatedly identified, significant building, electrical, plumbing and fire code deficiencies at the Property.

6.06.   By Defendants' own statements, multiple individuals continue to spend large amounts of time performing work on the Property, subjecting themselves to, and likely exacerbating, the repeatedly identified, significant building, electrical, plumbing and fire code deficiencies at the Property.

6.07.   By Defendants' own statements, Defendants intend to allow numerous individuals to move into the Property in the very near future, prior to having addressed the repeatedly identified, significant building, electrical, plumbing and fire code deficiencies at the Property.

6.08.   Upon the City's information and belief, it is likely that many, if not all, of the individuals whom Defendants intend to allow to move into the Property are entirely unaware of the repeatedly identified, significant building, electrical, plumbing and fire code deficiencies at the Property.  Upon the City's information and belief, recent activity at the Property indicates that more individuals, furniture and fixtures are being moved into the Property, thereby heightening the City's concerns about the health, safety and welfare of those persons in the Property where so many health and safety code violations continue to exist.

6.09.   Defendants' actions have subjected, and continue to subject, multiple individuals to substantial danger of physical injury or adverse health impact by inhabiting the Property. Further, Defendants' actions will subject numerous unsuspecting individuals to substantial danger of physical injury or adverse health impact on the Property.

6.10.   Accordingly, the City requests, upon notice and hearing, that the Court issue a

temporary restraining order, as follows:

(1) immediately closing the Property, vacating the Property of all persons and preventing anyone from entering the Property for any reason, until after Defendants comply with the City's Commercial Plans Submittal Guidelines for remodel/renovation, which, *inter alia,* include submitting a complete set of construction plans indicating work that has been completed since Defendants purchased the Property, and listing all work Defendants intend to perform on the Property from this point forward, as well as submitting a complete asbestos survey in accordance with Texas Asbestos Health Protection Rules (TAHPR) and the National Emissions Standards;

(2) prohibiting Defendants from performing any work on the Property until after Defendants obtain all required permits from the City; and

(3) immediately prohibiting anyone from residing in the Property for any period of time, and all persons shall immediately vacate the Property until after Defendants obtain a Certificate of Occupancy for the Property from the City; and

(4) prohibiting Defendants from selling, transferring, or otherwise conveying any interest in the Property without giving the requisite notice of violations and securing waivers from the receiving party.

<u>COUNT TWO:</u>
<u>REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF</u>

6.11.   The City re-alleges paragraphs 5.01 through 5.58, above, as if repeated verbatim.

6.12.   Chapter 54 of the Texas Local Government Code provides that the City may seek a writ of injunction against the owner or person with control over the premises at issue, to prohibit conduct in violation of a City ordinance, upon "a showing of substantial danger of injury or an adverse health impact to any person or to the property of any person other than the defendant." TEX.LOC.GOV'T CODE ANN., § 54.016(a).

6.13.   Chapter 54 does not require the City to prove that another adequate remedy or penalty for the City ordinance violation(s) exists at law to obtain injunctive relief. TEX.LOC.GOV'T CODE ANN., § 54.016(b).  Chapter 54 also does not require the City to prove that it has sought or obtained a criminal conviction for such City ordinance violation(s).  *Id.*

6.14.   Procedurally, the City need only plead: (a) the identification of the real property involved in the violation; (b) the Defendants' relationship to the real property or activity involved in the violation; (c) the citation to the applicable ordinances; (d) a description of the violations; and (e) a statement that Chapter 54, Subchapter B, of the Texas Local Government Code applies to the ordinances being violated.  TEX.LOC.GOV'T CODE ANN., § 54.015(a).

6.15.   Defendants, as owners and operators of the Property, have violated City ordinance provisions including, but not limited to, the following: City Code Title XV Land Usage, Chapter 150 Codes Adopted, Section 150.16, and City Code Title XV Land Usage, Chapter 151 Buildings, Sections 151.01, 151.02, 151.03, 151.04, 151.05, 151.06 and 151.07, by maintaining unhealthful and dangerous conditions on the Property.  Defendants, as owners and operators of the Property, have violated state law and City ordinances by failing to maintain the Property in accordance with all applicable legal requirements.  Defendants, therefore, have caused, by action or inaction, unhealthful and dangerous conditions to exist on the Property that are injurious to the health, safety and welfare of the residents in the Property and the residents of the surrounding neighborhood, the citizens of Canton, and any member of the public who visits the Property.

6.16.   Chapter 54, subchapter B of the Texas Local Government Code applies to City ordinance provisions including, but not limited to, the following: City Code Title XV Land Usage, Chapter 150 Codes Adopted, Section 150.16, and City Code Title XV Land Usage, Chapter 151 Buildings, Sections 151.01, 151.02, 151.03, 151.04, 151.05, 151.06 and 151.07.

Consequently, as provided by section 54.012 of the Texas Local Government Code, the City may seek to enforce City ordinance provisions including, but not limited to, the following: City Code Title XV Land Usage, Chapter 150 Codes Adopted, Section 150.16, and City Code Title XV Land Usage, Chapter 151 Buildings, Sections 151.01, 151.02, 151.03, 151.04, 151.05, 151.06 and 151.07, by bringing this action.

6.17. By Defendants' own statements, several individuals have begun residing at the Property, despite Defendants failing to address the repeatedly identified, significant building, electrical, plumbing and fire code deficiencies at the Property.

6.18. By Defendants' own statements, multiple individuals continue to spend large amounts of time performing work on the Property, subjecting themselves to, and likely exacerbating, the repeatedly identified, significant building, electrical, plumbing and fire code deficiencies at the Property.

6.19. By Defendants' own statements, Defendants intend to allow numerous individuals to move into the Property in the very near future, prior to having addressed the repeatedly identified, significant building, electrical, plumbing and fire code deficiencies at the Property.

6.20. Upon the City's information and belief, it is likely that many, if not all, of the individuals whom Defendants intend to allow to move into the Property are entirely unaware of the repeatedly identified, significant building, electrical, plumbing and fire code deficiencies at the Property. Upon the City's information and belief, recent activity at the Property indicates that more individuals, furniture and fixtures are being moved into the Property, thereby heightening the City's concerns about the health, safety and welfare of those persons in the Property where so many health and safety code violations continue to exist.

6.21. Defendants' actions have subjected, and continue to subject, multiple individuals

to substantial danger of physical injury or adverse health impact by inhabiting the Property. Further, Defendants' actions will subject numerous unsuspecting individuals to substantial danger of physical injury or adverse health impact on the Property.

6.22.    Accordingly, the City requests, upon notice and hearing, the issuance of a temporary injunction, and upon final trial, a permanent injunction, enjoining Defendants, their employees, servants, contractors, volunteers, successors and assignees, and any person in active concert or participation with Defendants, as follows:

(1) immediately closing the Property, vacating the Property of all persons and preventing anyone from entering the Property for any reason, until after Defendants comply with the City's Commercial Plans Submittal Guidelines for remodel/renovation, which, *inter alia,* include submitting a complete set of construction plans indicating work that has been completed since Defendants purchased the Property, and all work Defendants intend to perform on the Property from this point forward, as well as submitting a complete asbestos survey in accordance with Texas Asbestos Health Protection Rules (TAHPR) and the National Emissions Standards;

(2) prohibiting Defendants from performing any work on the Property until after Defendants obtain all required permits from the City;

(3) immediately prohibiting anyone from residing in the Property for any period of time, and all persons shall immediately vacate the Property until after Defendants obtain a Certificate of Occupancy for the Property from the City; and

(4) prohibiting Defendants from selling, transferring, or otherwise conveying any interest in the Property without giving the requisite notice of violations and securing waivers from the receiving party.

6.23.    The City is entitled to temporary and permanent injunctive relief prayed for herein

pursuant to Texas Local Government Code Sections 54.012 through 54.020, and specifically, Section 54.016 because: (a) the condition of the Property constitutes violations of City ordinances and codes to which Texas Local Government Code Sections 54.012 through 54.020 apply; (b) Defendants' violations of the City's ordinances and codes are continuing; (c) Defendants have received actual notice of the ordinances and codes being violated in the notices; and (d) Defendants received notice of the ordinances and code violations, Defendants failed and refused to take action necessary for compliance with the ordinances and code and to correct or otherwise remedy the violations on the Property.

## VII.
## COUNT THREE:
## REQUEST FOR DECLARATORY JUDGMENT

7.01.   The City re-alleges paragraphs 5.01 through 5.58, above, as if repeated verbatim.

7.02.   Pursuant to Sections 37.001-.011 of the Texas Civil Practice and Remedies Code (the Texas Uniform Declaratory Judgments Act), the City requests that the Court find, declare, and decree the following:

a.      Defendants' actions regarding the residential structure located on the Property, as detailed in this Original Petition, are a violation of City ordinance provisions including, but not limited to, the following: City Code Title XV Land Usage, Chapter 150 Codes Adopted, Section 150.16, and City Code Title XV Land Usage, Chapter 151 Buildings, Sections 151.01, 151.02, 151.03, 151.04, 151.05, 151.06 and 151.07;

b.      Defendants received notice of the City's ordinance and code provisions and failed to take corrective action to remedy the defective and dangerous condition of the Property;

c.      The City is entitled to temporary and permanent injunctive relief enjoining Defendants, their employees, servants, contractors, volunteers, successors and assignees, and any

person in active concert or participation with Defendants from:

(1) entering the Property for any reason until after Defendants comply with the City's Commercial Plans Submittal Guidelines for remodel/renovation, which, *inter alia,* include submitting a complete set of construction plans indicating work that has been completed since Defendants purchased the Property, and all work Defendants intend to perform on the Property from this point forward, as well as submitting a complete asbestos survey in accordance with Texas Asbestos Health Protection Rules (TAHPR) and the National Emissions Standards;

(2) performing any work on the Property until after Defendants obtain all required permits from the City; and

(3) selling, transferring, or otherwise conveying any interest in the Property without giving the requisite notice of violations and securing waivers from the receiving party.

## VIII.
## COUNT FOUR:
## REQUEST FOR CIVIL PENALTIES

8.01.   The City re-alleges paragraphs 5.01 through 5.58, above, as if repeated verbatim.

8.02.   Pursuant to Texas Local Government Code Section 54.017, the City may recover a civil penalty not to exceed $1,000.00 a day per violation if Defendants were notified of the provisions of particular ordinances, and after Defendants received notice of the ordinance provisions, the Defendants committed acts in violation of the ordinances or failed to take action necessary for compliance with the ordinances. *See* TEX.LOC.GOV'T CODE ANN., § 54.017.

8.03.   Defendants were given notice of the violations.   Included in the notice was detailed descriptions of the violations and applicable City ordinances and applicable building, electrical and fire safety code provisions.   Defendants have failed and refused, and continue to fail and refuse, to correct the identified violations and comply with the City ordinances and

applicable building, electrical and fire safety code provisions referenced in the notice.

8.04.    The City is entitled to the civil penalties prayed for herein pursuant to Texas Local Government Code Sections 54.012 through 54.020, and specifically, Section 54.017 because: (a) the condition of the Property constitutes violations of City ordinances and codes to which Texas Local Government Code Sections 54.012 through 54.020 apply; (b) Defendants' violations of the City's ordinances and codes are continuing; (c) Defendants have received actual notice of the ordinances and codes being violated in the notices; and (d) Defendants received notice of the ordinances and code violations, Defendants failed and refused to take action necessary for compliance with the ordinances and code and to correct or otherwise remedy the violations on the Property.

## IX.
## COUNT FIVE:
## REQUEST FOR ATTORNEY'S FEES

9.01.    The City re-alleges paragraphs 5.01 through 5.58, above, as if repeated verbatim.

9.02.    Pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code, the City requests that the Court award it costs and reasonable and necessary attorney's fees through trial and appeal as are equitable and just.

## X.
## CONDITIONS PRECEDENT

10.01.   All conditions precedent to the City being entitled to bring this action and recover the relief requested herein have been performed, have occurred, or have been waived.

## XI.
## CITY NOT REQUIRED TO POST BOND

11.01.   Pursuant to § 6.002 of the Texas Civil Practice and Remedies Code, and other law, the City is not required to post a bond to obtain injunctive relief against Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiff City of Canton, Texas, requests that Defendants New Beginnings Fellowship Church of Houston, Texas, Barney J. Donalson, Jr., and Covenant Community of New Beginnings Fellowship/Canton be cited to appear and answer, after which the City be granted:

(1)    a temporary restraining order:

(a) immediately closing the Property, vacating the Property of all persons and preventing anyone from entering the Property for any reason, until after Defendants comply with the City's Commercial Plans Submittal Guidelines for remodel/renovation, which, *inter alia,* include submitting a complete set of construction plans indicating work that has been completed since Defendants purchased the Property, and listing all work Defendants intend to perform on the Property from this point forward, as well as submitting a complete asbestos survey in accordance with Texas Asbestos Health Protection Rules (TAHPR) and the National Emissions Standards;

(b) prohibiting Defendants from performing any work on the Property until after Defendants obtain all required permits from the City; and

(c) immediately prohibiting anyone from residing in the Property for any period of time, and all persons shall immediately vacate the Property until after Defendants obtain all required permits from the City; and

(d) prohibiting Defendants from selling, transferring, or otherwise conveying any interest in the Property without giving the requisite notice of violations and securing waivers from the receiving party.

(2)    an order that the City is entitled to temporary and permanent injunctive relief prohibiting Defendants, as follows:

(a) immediately closing the property, vacating the Property of all persons and preventing anyone from entering the Property for any reason, until after Defendants comply with the City's Commercial Plans Submittal Guidelines for remodel/renovation, which, *inter alia,* include submitting a complete set of construction plans indicating work that has been completed since Defendants purchased the Property, and all work Defendants intend to perform on the Property from this point forward, as well as submitting a complete asbestos survey in accordance with Texas Asbestos Health Protection Rules (TAHPR) and the National Emissions Standards;

(b) prohibiting Defendants from performing any work on the Property until Defendants obtain all required permits from the City;

(c) immediately prohibiting anyone from residing in the Property for any period of time, and all persons shall immediately vacate the Property until after Defendants obtain all required permits from the City; and

(d) prohibiting Defendants from selling, transferring, or otherwise conveying any interest in the Property without giving the requisite notice of violations and securing waivers from the receiving party, and assessing against Defendants, all applicable civil penalties, pursuant to Texas Local Government Code Sections 54.012 through 54.020, and specifically, Sections 54.017 and 54.018;

(3)     a declaratory judgment finding:

(a) Defendants' actions regarding the Property, as detailed in this Plaintiff's Original Petition, are a violation of City ordinance provisions including, but not limited to, the following: City Code Title XV Land Usage, Chapter 150 Codes Adopted, Section 150.16, and City Code Title XV Land Usage, Chapter 151 Buildings, Sections 151.01, 151.02, 151.03, 151.04, 151.05, 151.06 and 151.07 and

(b) Defendants received notice of the City's ordinance and code provisions and failed to take corrective action to remedy the defective and dangerous condition of the Property.

(4)     all costs of court and reasonable and necessary attorney's fees through trial and all levels of appeal; and

(5)     all other relief to which the City is justly entitled.

Respectfully submitted,

By

Edwin P. Voss, Jr.
State Bar No. 20620300
evoss@bhlaw.net
Michael L. Martin
State Bar No. 24108956
mmartin@bhlaw.net

BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas 75081
Telephone:  214-747-6100
Fax:  214-747-6111

ATTORNEYS FOR PLAINTIFF
CITY OF CANTON, TEXAS

Verification

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF DALLAS | § | |

Before me, the undersigned Notary Public, on this day personally appeared Lonny Cluck who, after being duly sworn, stated under oath that he is the City Administrator and duly authorized agent for the City of Canton, Texas, Plaintiff in this action; that he has read the foregoing Plaintiff City of Canton's Original Petition, and Verified Application for Temporary Restraining Order, Temporary and Permanent Injunctive Relief, Declaratory Judgment, and Civil Penalties; and that the factual information set forth therein is within his personal knowledge and is true and correct.

Lonny Cluck
City Manager
City of Canton, Texas

Subscribed and sworn to before me on the 2nd day of August, 2019, to certify which witness my hand and official seal.

Notary Public in and for the State of Texas

07-11-2023
My Commission Expires: